UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PHYLLIS VITTATOE,                )      NO. EDCV 08-978-CT
                                 )
            Plaintiff,           )      OPINION AND ORDER
                                 )
      v.                         )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                                 )
            Defendant.           )
_____ )

     For the reasons set forth below, it is ordered that the matter be
**REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to
defendant Commissioner of Social Security ("the Commissioner") for
further administrative action consistent with this opinion and order.

SUMMARY OF PROCEEDINGS

     On July 28, 2008, plaintiff, Phyllis Vittatoe ("plaintiff"), filed
a complaint seeking judicial review of the denial of benefits by the
Commissioner pursuant to the Social Security Act ("the Act").   On
November 11, 2008, plaintiff filed a brief with points and authorities
in support of remand or reversal.  On January 12, 2009, the Commissioner

1 | filed an opposition to plaintiff's complaint.

2 | SUMMARY OF ADMINISTRATIVE RECORD

3 | 1.   Proceedings

4 | On October 28, 2004, plaintiff filed applications for a period of

5 | disability and disability insurance benefits, alleging disability since

6 | June 1, 2003.  (TR 139-59).[1]  The applications were denied initially and

7 | upon reconsideration.   (TR 92-97, 101-05).

8 | On May 3, 2005, plaintiff filed a request for a hearing before an

9 | administrative law judge ("ALJ").   (TR 84-86).   On December 19, 2006,

10 | plaintiff, represented by an attorney, appeared and testified before an

11 | ALJ.   (TR 693-726).  On September 11, 2007,  a second hearing was held,

12 | during which a medical expert testified.   (TR 679-92).   On December 18,

13 | 2007, a third hearing was held, during which plaintiff and a vocational

14 | expert testified.  (TR 653-725).  On January 15, 2008, the ALJ issued a

15 | decision that plaintiff was not disabled, as defined by the Act, and

16 | thus was not eligible for benefits.   (TR 13-21).   On January 25, 2008,

17 | plaintiff filed a request with the Social Security Appeals Council to

18 | review the ALJ's decision.   (TR 9).   On May 22, 2008, the request was

19 | denied.   (TR 6-8).   Accordingly, the ALJ's decision stands as the final

20 | decision of the Commissioner.   Plaintiff subsequently sought judicial

21 | review in this court.

22 | 2.   Summary Of The Evidence

23 | The ALJ's decision is attached as an exhibit to this opinion and

24 | order and, except as otherwise noted, materially summarizes the evidence

25 |

26 | [1]   "TR" refers to the transcript of the record of
27 | administrative proceedings in this case and will be followed by
the relevant page number(s) of the transcript.

28 | 2

1   in the case.

2   PLAINTIFF'S CONTENTIONS

3   Plaintiff essentially contends as follows:

4   1.   The ALJ failed to consider the treating physicians' opinions;

5   2.   The ALJ failed to consider the severity of plaintiff's mental

6   impairment;

7   3.   The ALJ failed to properly rate the functional limitations

8   resulting from plaintiff's mental impairment;

9   4.   The ALJ failed to pose a complete hypothetical question to the

10   vocational expert; and,

11   5.   The ALJ improperly determined that the plaintiff could perform the

12   job of a cashier and grocery scan coordinator.

13   STANDARD OF REVIEW

14   Under 42 U.S.C. §405(g), this court reviews the Commissioner's

15   decision to determine if: (1) the Commissioner's findings are supported

16   by substantial evidence; and, (2) the Commissioner used proper legal

17   standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

18   Substantial evidence means "more than a mere scintilla," Richardson v.

19   Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

20   Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

21   When the evidence can reasonably support either affirming or

22   reversing the Commissioner's conclusion, however, the Court may not

23   substitute its judgment for that of the Commissioner.   Flaten v.

24   Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.

25   1995).   The court has the authority to affirm, modify, or reverse the

26   Commissioner's decision "with or without remanding the cause for

27   rehearing." 42 U.S.C. §405(g).   Remand is appropriate where additional

28

3

proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden

shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

> 2. Issues

> A. The ALJ's Evaluation of the Record Evidence Regarding Plaintiff's Mental Impairment (Issues 1 through 4)

Plaintiff asserts several challenges to the ALJ's conclusions regarding the purported severity of plaintiff's depression. Each of these challenges revolves around the ALJ's evaluation of the opinions of plaintiff's treating psychiatrists. First, plaintiff contends that the ALJ erred by failing to consider plaintiff's treating psychiatrists' opinions regarding plaintiff's depression. Second, plaintiff asserts that the ALJ compounded this error in finding that plaintiff's depression did not constitute a severe impairment. Third, plaintiff contends that the ALJ improperly rated the functional limitations resulting from plaintiff's mental impairment. Fourth, plaintiff contends that, again as a result of the ALJ's failure to consider plaintiff's treating physicians' opinions, the ALJ posed an incomplete hypothetical to the vocational expert. Specifically, according to plaintiff, the ALJ's hypothetical failed to account for the limitations on plaintiff's functional abilities set forth in the treating physicians' opinions.

A treating physician's opinion generally is entitled to great weight. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating

physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Andrews v. Shalala, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927.

Notwithstanding this, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of a treating physician and may reject the controverted opinion of an treating physician only for "specific and legitimate reasons that are supported by substantial evidence." Id. at 830-31. Accordingly, it is error for an ALJ to implicitly reject the controverted opinion of a treating physician without setting forth specific, legitimate reasons for doing so. See Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (opinion of a treating doctor, "even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record").

Here, the ALJ's conclusions regarding plaintiff's alleged depression resulted in the implicit rejection of the opinions of two of plaintiff's treating psychiatrists. While the Commissioner offers cogent reasons for rejecting these opinions, the ALJ did not explicitly do so. The two treating psychiatrists, Imelda Alfonso, M.D., and Carlos Pequeno, M.D., both opined that plaintiff suffered from "major depressive disorder." (TR 533, 524). Additionally, both treating

psychiatrists assessed low Global Assessment Functioning ("GAF") scores.[2] Specifically, Dr. Alfonso assessed a GAF score of 48, while Dr. Pequeno assessed a GAF score of 50.  A GAF score between 48 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> p. 34 (4th ed. 2000 (DSM-IV)).

The ALJ, however, never addressed these findings and, instead, relied on the opinion of Clifford Taylor, Ph.D., a consultative psychologist, and the medical expert who agreed with Dr. Taylor that plaintiff had a "mild degree of a major depressive disorder" as of February 2007. (TR at 20, 574).  According to the DSM-IV, Dr. Taylor's GAF score of 76 suggests that "<u>if symptoms are present</u>, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); <u>no more than slight impairment</u> in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."  DSM-IV at 34 (emphasis added).  Thus, while the treating physicians' opinions indicate serious symptoms and serious impairments in social and occupational functioning, Dr. Taylor's opinion leaves open the possibility that there may not even be symptoms present.  And in any event, in Dr. Taylor's opinion, if symptoms are present, they would have only a slight impact on plaintiff's social and occupational functioning.

---

[2]   "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  <u>Vargas v. Lambert</u>, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

Although the ALJ was free to resolve the conflict between the treating psychiatrists' opinions and that of Dr. Taylor, the ALJ's opinion demonstrates that the ALJ did not do so.  Rather, without mentioning the findings of the treating psychiatrists, the ALJ summarized Dr. Taylor's opinion – including the relatively high GAF score – and then concluded that Dr. Taylor's findings "[were] consistent with the medical evidence as a whole. . . ."  (TR at 20).

Even assuming plaintiff's mental impairment is severe, as that term is defined by the Act, it may not ultimately be disabling.  However, remand is warranted for the ALJ to articulate consideration of the treating medical evidence regarding plaintiff's mental impairment and continue the sequential evaluation beyond step 2, if warranted.[3]

### B.  Plaintiff's RFC (Issue 5)

Plaintiff contends that the ALJ improperly assessed her RFC.  Specifically, plaintiff contends that the ALJ improperly found that plaintiff was able to perform her past relevant work as a cashier at Wal-Mart and as a grocery scan coordinator.  First, plaintiff asserts that the cashier position at Wal-Mart would require her to perform frequent reaching and endure intense interpersonal contact, neither of which she is capable of doing.  Second, plaintiff maintains that the ALJ erred in relying on the vocational expert's testimony to find plaintiff capable of performing her past relevant work as a grocery scan coordinator because the vocational expert was not familiar with the position; consequently, according to plaintiff, the vocational expert

---

[3] Plaintiff contends that the ALJ committed several other errors in regards to the alleged severity of plaintiff's mental impairment.  Each of those alleged errors, however, hinges upon the proper evaluation of the treating psychiatrists' opinions.

was not qualified to render an opinion as to whether plaintiff could perform that job.

The ALJ may rely on the Dictionary of Occupational Titles (DOT) to determine whether plaintiff is capable of performing plaintiff's past relevant work. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). However, the DOT is not the only source of admissible information regarding jobs; rather, the ALJ may take administrative notice of any reliable source, including the testimony of a vocational expert. Johnson v. Shalala, 60 F.3d at 1435.

Here, the ALJ's opinion is free from material error insofar as the errors that plaintiff has identified regarding plaintiff's physical abilities and her past relevant work as a grocery scan coordinator. First, the ALJ properly relied on the vocational expert's testimony that plaintiff could perform the physical demands associated with plaintiff's past relevant work as a Wal-Mart cashier. Plaintiff argues that she cannot perform this work because, according to the Dictionary of Occupational Titles ("DOT"), the job requires frequent reaching. DOT 211.462-010. Such a requirement, according to plaintiff, is inconsistent with the ALJ's finding that plaintiff was capable of only occasionally reaching above shoulder level. (TR at 16). Citing this alleged inconsistency, plaintiff concludes that the vocational expert's testimony that plaintiff could perform work as a cashier is unreliable. But the DOT is not incompatible with either the ALJ's finding or the vocational expert's finding because the DOT does not state that plaintiff would have to frequently reach above her shoulder level. Rather, the DOT states only that she must perform frequent reaching. Thus, because the vocational expert's testimony comports with the DOT,

the ALJ was free to rely on that testimony.  <u>Cf.</u> <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007) (interpreting Social Security Ruling 00-4p, and holding that, where a conflict exists between DOT and vocational expert testimony, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles").

Second, the ALJ committed no error in relying on the vocational expert's testimony regarding plaintiff's ability to perform her past relevant work as a grocery scan coordinator.  Although the vocational expert was not familiar with this specific job, the lack of familiarity was cured by the ALJ's questioning of plaintiff.  (TR at 669-73). Specifically, the ALJ questioned plaintiff about the duties and physical demands required of the job.  And, the vocational expert did not opine about plaintiff's ability to perform the job until after the ALJ had questioned plaintiff and after the vocational expert herself had asked questions about the job.  (<u>Id.</u>).  Although plaintiff now contends that the vocational expert lacked sufficient familiarity with the job to opine about plaintiff's ability to perform it, plaintiff never objected during the hearing to the vocational expert's characterization of the job.  Nor did plaintiff's counsel seek to question plaintiff further about the demands of the job.  Under these circumstances, the court finds that the ALJ did not commit material error in relying on the vocational expert's testimony regarding plaintiff's ability to perform her past relevant work as a grocery scan coordinator.

In contrast, the court cannot conclude that there was no material error regarding the ALJ's finding that plaintiff could withstand the

10

mental demands associated with either of plaintiff's past relevant occupations.  As discussed above, the ALJ did not resolve the conflict in the medical evidence regarding plaintiff's mental impairment. Accordingly, the court believes remand is appropriate on this question as well.[4]

## REMAND IS APPROPRIATE IN THIS CASE

The decision whether to remand a case for additional evidence is within the discretion of the court.  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that remand is appropriate to allow the ALJ to consider the medical evidence regarding plaintiff's mental impairment and to determine the extent to which that impairment may limit plaintiff's ability to perform her past relevant work and to perform basic work-related activities.

---

[4] Plaintiff also asserts that the ALJ's finding that plaintiff could perform her past relevant work as a Wal-Mart cashier is inconsistent with the ALJ's finding that plaintiff "should not have any intense interpersonal contact."  (TR at 16). These findings are inconsistent, according to plaintiff, because the DOT states that the job of cashier requires the ability to deal with people.  DOT 211.462-010.  But contrary to plaintiff's suggestion, dealing with people is not the same thing as having intense interpersonal contact.  Accordingly, the court finds that the ALJ did not error in this regard, although, on remand, the ALJ may have to reconsider the past relevant work finding depending on how the ALJ resolves the conflicting medical evidence regarding plaintiff's mental impairment.

CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: January 16, 2009

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**13**

### DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Phyllis Y Vittatoe | |
| (Claimant) | |
| | (Social Security Number) |
| (Wage Earner) | |

### JURISDICTION AND PROCEDURAL HISTORY

On October 28, 2004, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on October 28, 2004. In both applications, the claimant alleged disability beginning June 1, 2003. The claims were denied initially on October 28, 2004, and upon reconsideration on April 28, 2005. Thereafter, the claimant filed a timely written request for hearing on May 6, 2005 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a supplemental hearing held on December 18, 2007, in San Bernardino, California. Also appearing and testifying were William H. Soltz Ph.D., an impartial medical expert and Corinne J. Porter, an impartial vocational expert. The claimant is represented by Bill La Tour, an attorney.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2006. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned Administrative Law Judge concludes the claimant has not been under a disability within the meaning of the Social Security Act from June 1, 2003 through the date of this decision.

See Next Page



## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

See Next Page



Phyllis Y Vittatoe ▮▮▮▮▮▮

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1.   **The claimant met the insured status requirements of the Social Security Act through September 30, 2006.**

2.   **The claimant has not engaged in substantial gainful activity since June 1, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

There is evidence that the claimant has engaged in work after the alleged date of onset, but claim is not being denied based on substantial gainful activity. However, the claimant's credibility is diminished and this issue will be discussed further regarding her credibility as they relate to her testimony and subjective complaints.

3.   **The claimant has the following severe impairments: a disorder of the spine; degenerative arthritis; degenerative disc disease; status post spinal fusion; and obesity (20 CFR 404.1520(c) and 416.920(c)).**

The claimant has a disorder of the spine with a diagnosis of degenerative arthritis of the cervical spine in June 2002 (Exhibit 8F, p. 14); a diagnosis of degenerative disc disease of the lumbar spine, status post spinal fusion in August 2002 (exhibit 7F, p. 19); and obesity with a body mass index of between 35 and 40 (testimony of the medical expert).

See Next Page





As noted above, that the Administrative Law Judge has considered Ruling 02-01p as it relates to the claimant's condition of obesity. Although obesity itself is not a listed impairment the potential effects that it has in causing or contributing to impairments in the claimant's body systems have been considered. Specifically, the claimant's obesity does not by itself or in combination with her other impairments meet the requirements of a listing. Based on the objective evidence the functional limitations adopted herein generously consider the claimant's weight and it's affect on her ability to ambulate as well as her other body systems.

The claimant has been diagnosed with a depressive disorder, mild and non severe based on the objective medical evidence and testimony of the medical expert. The claimant has never been hospitalized and her depression does not cause more than mild limitations in any of the B criteria: activities of daily living; social functioning; concentration, persistence, and pace; and there have been no episodes of decompensation.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The claimant does not singly or in combination have the severity of symptoms required to meet or equal a medical Listing.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. Specifically, the claimant can occasionally lift and/or carry 20 pounds and frequently 10 pounds; she can push and pull within the weight restrictions herein; She can stand and/or walk six hours out of an eight-hour work day and sit for eight hours; she should have a sit stand option and be able to change positions one to three minutes every hour; she can occasionally climb stairs, bend, stoop, balance, kneel, crouch, or crawl; she can occasionally reach above shoulder level, bilaterally; she is precluded from having her head in a fixed position for over an hour without a brief break of one to three minutes; she could occasionally move her head in extreme ranges of motions, rotation, flexion and extension, but side to side motion being unlimited; she is precluded from using hazardous or fast paced machinery or working at unprotected heights due to her medications; she is limited to moderately complex tasks due to her medications; she should not be required to do safety operations or hypervigilence; and she should not have any intense interpersonal contact.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable

See Next Page



clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

The claimant admitted that she was currently babysitting her eleven month old grandchild, working 25 to 30 hours a week. However, she alleged she was only earning $347.00 dollars a month. She said she started doing this work in September 2007 and her grandchild weighed 17 pounds. She also reported receiving AFDC, but said she was not receiving food stamps or section eight any longer.

The claimant said she could not work full time because her left leg burns, has numbness and tingling. She said she gets headaches two to three times a week and they last about two hours.

See Next Page



Phyllis Y Vittatoe ████████

The claimant admitted that she did daily exercise and a change in her blood pressure medication had helped. She said that the exercises she did were to relieve pressure from a pinched nerve. The claimant admitted that she could walk four miles on a good day and it would take her an hour to an hour and one-half to do this.

She admitted to being able to lift between ten and fifteen pounds, reported that sometimes she had difficulty standing, and she thought she could not do a job that required her to stand all day. She thought she could do a job where she could sit four hours out of an eight-hour day and stand four hours out of an eight-hour day. She reported taking only Motrin 800mg for pain and said she took it two to three times a week. She also reported that she had no side effects from this pain medication. She said she took two kinds of psychiatric medications, Wellbutrin and Rimeron.

The claimant reported that when she was in school she was making A's and B's and she had finished certified nursing training and received her CNA certification.

The claimant alleged that she had good days and bad days and that on bad days she did not want to be around anyone and would scream at her kids.

In addition to caring for her 11 month old grand child the claimant admitted that she had a fifteen month old child of her own. She also described that neither the children were potty trained yet. She described that all of her other children were in school.

On February 21, 2007, the claimant reported to Dr. Taylor that she had six children between the ages of 5 and 18 (exhibit 21F, p. 3). She did not report that she also had an infant. In February of 2007 the claimant would have had a newborn at home based on her testimony in December 2007.

The claimant is not consistent in regards to her statements about her work/earnings, daily activities and her credibility is further diminished taking into consideration her misrepresentation of earnings in 2003. Initially the claimant testified that she was not employed since leaving her last job in 2002. However, when the undersigned pointed out that there were earnings noted in 2003 of over $13,000.00 dollars she eventually admitted that she worked through July 2003 with earnings of about 1,200.00 a month. In the most recent hearing she admitted to babysitting 20 to 30 hours a week for her daughter with earnings of only 347.00 dollars a month for a toddler of 17 months.

The claimant's admissions regarding daily activities and her work schedule are not consistent with a disabling condition. Her ability to care for her grandchild as well as her own 11 month old child in addition to her other six school age children is not consistent with a disabling condition. She admits to cooking, cleaning, running errands, laundry, reading, playing cards, socializing and working almost a full time schedule babysitting.

I have read and considered the claimant's statements in the daily activity questionnaire and her pain questionnaire, which are equally inconsistent with a disabling condition (Exhibits in the E file).

**See Next Page**



Phyllis Y Vittato

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. In addition the claimant was not truthful about her earnings in 2003.

The claimant hurt her back in a work related injury while working in a convalescent hospital in November 2001 (Exhibit 6F, p. 1). She was diagnosed with multiple levels of ruptured discs in 2002 and underwent lumbar surgery in August of 2002 (Exhibit 6F, p. 2).

A spine myleogram done on June 26, 2002 showed mild bulging of the annulus at L4-L5 and mild cervical spondylosis (Exhibit 8F, p. 14).

On September 4, 2002 the claimant's lumbar spine diagnostic test showed status post fusion L4-5 with stable alignment (Exhibit 7F, p. 10).

On December 8, 2003, Dr. Johnson, a specialist in neurosurgery, reviewed the claimant's diskectomy at L4-5, pedicle screw fixation and noted that the claimant's films "look good" (Exhibit 8F, p. 3). He reported that the screws were in good position and the alignment remained good.

On July 20, 2004 the claimant's surgical cite was reviewed once again and the radiologist reported that the claimant had moderate degenerative changes at L4-5 with a 3mm disc bulge, but no other abnormalities were seen (Exhibit 10F, p. 3).

On January 15, 2007 the claimant underwent a physical examination with the designated primary treating physician from the worker's compensation case (Exhibit 13F, pp. 1-6). Dr. Pratley examined the claimant and pertinent to these findings the clinical findings from this examination were similar to the prior earlier reports including the initial orthopedic evaluation dated February 17, 2003 (Exhibit 6F).

In Summary, Dr. Pratley thought the claimant was only precluded from doing heavy lifting, involving repetitive bending, or prolonged sitting or standing (Exhibit 13F, p. 5). He opined that she would be limited to twenty-five pounds but not on a repetitive basis. Id.

Dr. Nafoosi, a specialist in internal medicine offered testimony as a medical expert after reviewing the medical records. He thought the claimant had the following severe impairments since 2002, degenerative arthritis of the cervical spine (Exhibit 8F, p. 14); degenerative disc disease of the lumbar spine, status post spinal fusion, (Exhibit 7F, p. 19); and obesity with a body mass index of between 35 and 40.

He stated further that she had high blood pressure that was controlled with medications and there was no indication of any end organ damage, an appendicitis that did not meet the durational requirement to be considered a severe impairment and a condition of depression that had not required any hospitalizations or any treatment other than medication review.

See Next Page



Phyllis Y Vittatoe█████████

Dr. Nafoosi testified that considering all of the evidence, the claimant did not have an impairment that met or equaled a medical Listing.

He opined that in his opinion the claimant would be able to do work with occasional lifting up to 20 pounds and frequently 10 pounds; she could stand and/or walk six hour in an eight-hour work day and sit for up to eight hours; she could kneel, bend, stoop, balance, crouch and crawl occasionally; she was limited to occasional use of foot controls with her left upper extremity; she was limited to a fixed position with her neck of up to one hour and occasional full range of motion of her neck and unlimited side to side motion.

The claimant has very limited psychiatric treatment records and the medical expert, Dr. Soltz, a specialist in clinical psychology testified at the hearing in September 2007, that the claimant was depressed. However, he thought that the symptoms were mild based on the existing medical records (Exhibit 19F, pp. 1-10). The matter was continued in order to get medical records from the Phoenix Clinic.

The treatment records from Phoenix Clinic support conservative treatment with medication review and no emergency treatment or hospitalizations (Exhibit 26F, pp. 1-14).

Great weight has been given to the opinion of the State Agency review physicians (exhibit 14F), and to the medical expert Dr. Nafoosi. Their opinions are consistent with the claimant's medical records, admitted activities and the opinion of the claimant's treating physician, Dr. Pratley (exhibit 13F).

The light residual functional capacity adopted herein has considered the physical limitations noted by the medical source opinions as well as the subjective complaints of the claimant. As discussed above the credibility of the claimant has been diminished based on her inconsistent statements and misrepresentations of her earnings. However, she has still been given the benefit of the doubt based on the medical source opinions represented in the objective medical evidence.

The claimant's depression is considered mild based on the minimal and conservative care as well as her actual admitted daily activities. She has no psychiatric hospitalizations and the only current treatment is medication review.

Great weight has been given to the clinical findings of Dr. Taylor, Ph.D., a specialist in clinical psychology (Exhibit 21F). His findings are consistent with the medical evidence as a whole and the reported and known activities of the claimant. He interviewed the claimant, performed a mental status evaluation, reviewed her medical records and conducted multiple and extensive clinical tests (Exhibit 21F, pp. 1-10).

He diagnosed the claimant with mild depression on February 21, 2007 and noted that she had a Global Assessment Function (GAF) of 72. He noted that there was evidence of less than full effort on testing tasks as she produced "an invalid MMPI-II and slightly below normal Test of Memory Malingering. In general, he stated that the claimant's intelligent scores were not

See Next Page



Phyllis Y Vittatoe ▮▮▮▮▮▮▮                              Page 9 of 9   21

consistent with her work or school history (Exhibit 21F, p. 7). He noted that there were no more than mild functional limitations in any of the areas of functioning.

**6.   The claimant is capable of performing past relevant work as a cashier at Wal Mart and grocery scan jobs. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The vocational expert, Corrine Porter, reviewed the claimant's vocational file and was present for her testimony regarding past work. She stated that the claimant's grocery scan job was equivalent to a data entry job that would be a skill level (spv) of 4, semi-light job. She continued that the claimant could also work as a cashier.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

**7.   The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2003 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on October 28, 2004, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on October 28, 2004, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

John W. Belcher
Administrative Law Judge

1/14/2009
Date

JAN 1 5 2008

NMC

